STATE of Missouri, Respondent,

v.

Ronald BLEWETT, Appellant.

Ronald BLEWETT, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 44954, WD 46654.

Missouri Court of Appeals,
Western District.

May 18, 1993.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Appellant appeals his conviction for burglary in the second degree, his adjudication by the trial court as a prior offender and the five year sentence imposed by the trial court. Appellant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. Pursuant to Rule 29.15(*l*), the appeals are consolidated herein.

At approximately 5:25 p.m. on August 20, 1990, Margaret Harris looked out her picture window and saw two men park a green pick up truck in front of the house at 4000 Norton Street and exit the vehicle. Mrs. Harris lives at 3940 Norton Street. She saw them go first to the rear of the house, then to the front porch. She noticed that one of the men carried a crowbar. When she saw them enter the house, she called 911. Mrs. Harris has lived in the

neighborhood for 32 years and has known JoAnn Strickland, the owner of the house at 4000 Norton Street, for 25 years. Mrs. Strickland owns two houses on Norton. She and her son live in one and her son was renovating the house at 4000 Norton.

Officers Tucker and Smith responded to the 911 call and approached the residence. Tucker saw appellant "stick his head out of the door." Tucker had his weapon out and ordered appellant out of the house. As Tucker approached to within about ten feet of appellant, appellant began running from the house. Tucker pursued appellant through a wooded area and radioed for backup using his two-way radio. One of the backup units apprehended appellant. Officer Smith apprehended Sam Young, the other suspect, in the house.

Mrs. Strickland testified that she had been in the house at approximately 9:30 that morning, that when she left she secured the house, and that she had not given anyone permission to enter. At approximately 2:00 that afternoon, Mrs. Strickland went by the house and took note that the doors were still closed. When she returned home at about 7:00 p.m., she was informed of the break-in. She went with police to the vacant house. She noticed that the lock on the front door had been broken and that various items of personal property had been moved from their customary places.

As his first point on appeal, appellant claims that the motion court erred in denying his Rule 29.15 motion for post conviction relief without granting an evidentiary hearing. Appellant claims that his counsel provided ineffective assistance by (1) failing to submit a verdict directing instruction on the lesser included offense of trespass in the first degree; (2) failing to call appellant to testify as a witness on his own behalf; and (3) failing to object to a portion of the state's closing argument that indirectly referred to appellant's failure to testify.

■ A movant is entitled to an evidentiary hearing on a Rule 29.15 motion if he alleges facts, not conclusions that, if true, warrant relief. Those facts must not be refuted in the record and the matters complained of must have prejudiced appellant's defense. *State v. Watson*, 806 S.W.2d 677, 680 (Mo.App.1991). "Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(j).

Appellant's first allegation of error against the motion court concerns his counsel's failure to submit a jury instruction on the lesser included offense of trespass in the first degree. Appellant argues that the findings and conclusions of the motion court are clearly erroneous because the evidence shows lack of the essential element of intent to commit a felony inside the house. Appellant further argues that evidence of the broken lock on the front door and of his flight from the scene are as indicative of guilt of the lesser included offense of first degree trespass as they are of second degree burglary.

"A court is required to submit a lesser included offense instruction if the evidence arguably shows a lack of an essential element of the greater offense, thus affording a basis for conviction of the lesser." *State v. Garner*, 800 S.W.2d 785, 788 (Mo.App. 1990).

Because intent is rarely susceptible to proof by direct evidence, it is most often proven by circumstantial evidence. The circumstantial evidence in this case certainly gives rise to the reasonable inference that appellant entered the Strickland house with the intent of committing a crime. "Further, intent to commit a burglary exists where a person unlawfully enters a building containing items of value." *State v. Green*, 812 S.W.2d 779, 789 (Mo.App. 1991).

■ When reviewing the sufficiency of the evidence to support a conviction, the appellate court will view the evidence in the light most favorable to the verdict giving the state the benefit of all reasonable inferences drawn therefrom and disregarding any contrary evidence or inference. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98

L.Ed.2d 267 (1987). We determine only if the verdict is supported by the "evidence from which reasonable men could have found defendant guilty as charged." We do not weigh the evidence. *State v. Murphy*, 753 S.W.2d 90, 91 (Mo.App.1988). There is insufficient evidence to support appellant's argument that he entered the premises for any reason except to commit a crime. Intent is proven by circumstantial evidence. *State v. Jenkins*, 741 S.W.2d 767, 769 (Mo.App.1987).

Mrs. Strickland testified that she had checked the house earlier in the day and that everything was in order. When she left she locked the front door. At approximately 2:00 p.m., she again passed by the front of the house and the front door was closed. When she returned to the house that evening, after being notified that it had been broken into, the lock had been broken off the door and was hanging down. Inside the house, the headboard had been placed in the hallway, the dining table had been taken apart and moved into the living room, the waterbed mattress had been rolled up and moved into the living room and the coffee tables had been stacked up.

Officer Smith testified that the house appeared to have been ransacked. Officer Tucker testified that typically when burglars are going to remove property from a house, they first move things toward a central location within the house.

Section 556.046.2 states:

The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

"The 'basis' spoken of in § 556.046.2 must be more than mere possibility and speculation." *Green*, 812 S.W.2d at 787–88.

According to Mr. Young's testimony, he stopped at the house because the "yard needed to be cut" and he was looking for odd jobs. He further testified that, when he stepped onto the porch he saw the door open and that "things was strewed about." He thought the house was abandoned. Young also told the police, that he was at the house to remove a refrigerator. Both Mrs. Strickland and Mrs. Harris testified that the yard did not need to be cut. Mrs. Strickland testified that she had not requested that anyone remove the refrigerator.

In its conclusions of law concerning this point, the trial court stated:

The evidence was overwhelming that defendant was guilty of burglary as charged. There was no error in failing to give a trespass instruction.

To give a trespass charge the jury would have had to acquit on the burglary charge. The jury deliberated less than thirty minutes in this case. There is no reason to believe that the giving of a trespass instruction would have benefitted the Movant.

Appellant relies on *State v. Moore*, 729 S.W.2d 239 (Mo.App.1987), as supporting his point that the lesser included charge of trespass should have been submitted to the jury. In *Moore* we held that the evidence made it "possible to 'infer' that defendant entered the premises for reasons other than burglary."

Section 569.170 defines burglary in the second degree as follows:

1. A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime thereon;

2. Burglary in the second degree is a class C felony.

Section 569.140 defines trespass in the first degree as follows:

1. A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property.

2. A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or otherwise enclosed in a manner to exclude intruders or as to which notice against trespass is given by:

(1) Actual communication to the actor; or

(2) Posting in a manner reasonably likely to come to the attention of intruders.

3. Trespass in the first degree is a class B misdemeanor.

■ It is the trial court's obligation to instruct on all lesser included offenses supported by the evidence. It is error if the court fails to so instruct. *State v. Fleming,* 528 S.W.2d 513, 515 (Mo.App.1975).

■ The test to be applied to determine if an offense is a lesser included offense is: "If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater." *State v. Amsden,* 299 S.W.2d 498, 504 (Mo.1957). "An instruction on a lesser included offense is required only where an evidentiary basis exists for a verdict acquitting defendant of the offense charged." *State v. Hyatt,* 716 S.W.2d 423, 426 (Mo.App.1986).

"It is impossible to commit burglary in the second degree without committing trespass in the first degree." *State v. Neighbors,* 613 S.W.2d 143, 147 (Mo.App.1980). "Thus, there is no escape from the conclusion that trespass in the first degree is a lesser included offense of the greater offense of burglary in the second degree." *Id.* "The fact that the evidence establishes guilt of the defendant of a lesser crime does not necessarily mean that that crime is a lesser included offense and must be instructed upon." *Id.* "The trial court shall not be required to charge the jury with respect to an included offense unless there is a basis for acquitting defendant of the offense charged and convicting him of the lesser offense." *Id.*

In the instant case, the neighbor testified:

A I happened to see a green pickup drive up, and I mean he parked it, and it looked odd to be parking there because you wouldn't have any reason to be parking there.

Q Had you ever seen that truck before?

A No, I hadn't.

Q What happened when they parked?

A They parked, and he got out, and this here guy had a crowbar, and they went to 4000 Norton to the back door, and walked down the side of house, and went to the porch, and I guess about a minute then they was in the house.

I called 911 and told them what was happening, and I hung up and they called me back, and I stayed on the phone until the police arrived.

The police arrested someone coming out of the house, and handcuffed him; and the other one run across the street going east between the two houses.

Q OK. How many men were involved?

A Two.

Q Two of them got out of the truck?

A Yes.

The police testified the front door lock was broken and hanging down, the furniture was stacked in central locations in the house.

In *Moore* though the fact the defendant entered the residence of Zink was sufficient to support a conviction for burglary and to supply the element of the crime of intent to steal. *Moore,* 729 S.W.2d at 240. However, in *Moore* the court noted that the inference was not compelling since there was no forcible entry and the contents of the house were not disturbed. *Id.* Further, there was evidence Moore knocked on the door, then entered the premises to use the phone because his car was broken down. "The question is one of the defendant's intent and we cannot conclude that the evidence here established that intent as a matter of law." Defendant's flight from the scene and prior to trial indicates guilt. "But it does not establish defendant's guilty knowledge of which crime." *Id.* at 240–41.

■ In the instant case there was forced entry, the contents of the home had been moved, the evidence of burglary was compelling. The trial court did not err in refusing to submit an instruction on trespass

in the first degree. The question before the motion court was not, however, whether the instruction should have been given, but rather whether appellant's counsel provided ineffective assistance by failing to request the instruction. Under the facts herein the evidence does not support such an instruction. The motion court did not err in denying an evidentiary hearing on this issue.

Appellant's second allegation of error against the motion court concerns his counsel's failure to call him as a witness on his own behalf. The United States Court of Appeals for the Eighth Circuit summarized as follows the Supreme Court's position on a defendant's right to testify on his own behalf:

> In *Rock v. Arkansas*, [483] U.S. [44, 49] [107 S.Ct. 2704, 2707, 97 L.Ed.2d 37] (1987), the Supreme Court explicitly confirmed that criminal defendants have a constitutional right to testify on their own behalf. Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right. *See Jones v. Barnes*, 463 U.S. 745, 751 [103 S.Ct. 3308, 3312, 77 L.Ed.2d 987] (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to ... testify in his or her own behalf...."); *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 [97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594] (1977) (Burger, C.J., concurring); *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984), *cert. denied*, 475 U.S. 1064 [106 S.Ct. 1374, 89 L.Ed.2d 600] (1986). Moreover, the defendant's waiver of his right to testify, like his waiver of other constitutional rights, should be made voluntarily and knowingly. *Cf., e.g., Boykin v. Alabama*, 395 U.S. 238, 242–43 [89 S.Ct. 1709, 1712, 23 L.Ed.2d 274] (1969) (defendant's guilty plea must be made intelligently and voluntarily because it entails waiver of constitutional rights to trial by jury, to confront one's accusers, and against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 464–65 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938) (waiver of right to counsel must be intelligently and competently made).

*United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987) (parallel citations omitted).

■ During the trial of the matter, the trial court questioned appellant about his intent to testify. The questions by the court and answers by appellant follow:

Q  Mr. Blewett, I'm told by [your counsel] that you're not going to testify. Right now, is that your intention not to testify?

A  Yes, it is.

Q  OK. And have you and [your counsel] talked about that as much as you think you need to?

A  At this time.

Q  OK. And has he made you aware of the pluses and minuses of your testimony?

A  Yes.

Q  *And before you decide whether to testify or not, you'll talk to him again?*

A  Yes.

Q  The important thing is, Mr. Blewett, that this decision is yours. It's not mine. I don't care whether you testify or not. I'm not encouraging you to. I'm not urging you not to. But you need to talk to [your counsel] about it as much as need to to be comfortable, and then you need to make up your mind. Do you understand?

A  Yes.

Q  OK. And right now, you don't think you are going to testify?

A  Exactly.

(emphasis added). This is the extent of evidence adduced at trial concerning appellant's desire to testify. In addressing this point in its conclusions of law, the motion court stated that the record refutes appellant's claim that he was not allowed to testify on his own behalf even though he wanted to. We disagree. The court's questions clearly show its belief that appellant's decision about testifying was not then final.

■ The motion court further stated in its conclusions of law that "defendant

has prior convictions, and therefore, it was wise for him not to testify." It is not, however, the motion court's nor appellant's counsel's decision to make. The decision belongs only to the defendant. The court's opinion as to the wisdom of testifying is irrelevant. Appellant's allegation that he wanted to testify in his own behalf and that his attorney refused to call him as a witness, if true, warrants relief. The record fails to refute these allegations. A violation of a constitutional right of this magnitude is presumed prejudicial. *See Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The only way to determine whether appellant waived his right to testify is through an evidentiary hearing.

■ Appellant's third allegation of error against the motion court concerns his counsel's failure to object to a portion of the state's closing argument that indirectly referred to appellant's failure to testify. The offending statements by the state are as follows:

The defendant has told you himself that he is guilty, and he did that when he started running. If he was there, and hadn't done anything, why did he run? Guilty. A confession of guilt.

■ We agree with appellant that it is improper for a prosecutor to refer, directly or indirectly, to a defendant's failure to testify. *State v. Kalter*, 839 S.W.2d 670, 672 (Mo.App.1992). We are, however, unable to find even a remote reference to such failure in the instant case. Evidence of a defendant's flight and resisting arrest are clearly admissible to show consciousness of guilt. *State v. Robinson*, 834 S.W.2d 246, 249 (Mo.App.1992). The state's argument addresses only admissible evidence. There was substantial evidence that appellant did run from the officers trying to apprehend him. The record clearly refutes this allegation of error and, therefore, appellant is not entitled to an evidentiary hearing on his third allegation of error.

■ As his second point on appeal, appellant alleges that the trial court erred by failing to sustain his *Batson* challenge to venireperson Berry. The state used a peremptory challenge to remove Berry from the venire panel. Appellant challenged this on the *Batson* theory that the state's reason was not race neutral. The state argued that it removed Berry because his work history was unstable; that he had only been employed one month. Further, the state alleged that it struck everybody who was unemployed or hadn't been in a stable job position and that everyone on the panel had been employed at their current job for at least one year.

Appellant argues that the state left a person on the panel who had worked only four months for an optical company. The state responded that it had overlooked that person and was willing to strike that person and reopen the panel, a process that the trial court found objectionable. The trial court found the state's grounds adequate to justify the strike. In effect, the court found that a person's employment or work history is a race neutral reason for striking a venireperson.

■ In order for the reviewing court to reverse the trial court's decision regarding possible discrimination by a prosecuting attorney, the court must find the decision clearly erroneous. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988). To find the trial court was clearly erroneous, this court must have a definite and firm impression, after a review of all the evidence, that a mistake has been made. *State v. Antwine*, 743 S.W.2d 51, 68 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

The state left a venireperson who had been with an optical company for four months on the jury and struck a venireperson with one month's employment. The trial court found the reason race neutral. This court will not enter a "bean counting" contest to determine how many weeks or months on a job constitute steady employment. After a review of all the evidence, we are not left with a definite impression that a mistake has been made. On this issue, we defer to the trial court. *Griffin*,

756 S.W.2d at 462. Appellant's Point II is denied.

The judgment of conviction for burglary is affirmed. The judgment denying relief on the Rule 29.15 motion is reversed and that cause is remanded for an evidentiary hearing to address the argument of failing to call appellant as a witness in his own behalf.

All concur.